GRISWOLD PROPERTIES, LLC v
LEXINGTON INSURANCE COMPANY
GAINORS MEAT PACKING, INC v
HOME-OWNERS INSURANCE COMPANY
GARDNER v
HARLEYSVILLE LAKE STATES INSURANCE COMPANY

Docket Nos. 263197, 265278, 268335. Submitted April 18, 2007, at
Detroit. Decided May 17, 2007, at 9:00 a.m. Vacated in part by
order dated June 8, 2007. 275 Mich App 801.

Griswold Properties, L.L.C., owner of an office tower, brought an action
in the Wayne Circuit Court against Lexington Insurance Company,
its insurer, seeking full payment of claims relating to damage caused
by water-main ruptures. Griswold also sought 12 percent penalty
interest under § 2006(4) of the Unfair Practices Act, MCL
500.2006(4), on any recovery. Section 2006(4) provides for the impo-
sition of such interest from a date 60 days after satisfactory proof of
loss was received by an insured's own insurer and until the claim is
paid in full. The court, Michael J. Callahan, J., ordered the parties to
submit to appraisal, and the appraisal panel awarded nearly all the
amount claimed by Griswold. The court subsequently granted Gris-
wold's motion for summary disposition on the issue of penalty
interest, ruling that language in § 2006(4) requiring that the insur-
er's liability not be reasonably in dispute does not apply to a
first-party claimant under an insurance policy. Lexington appealed.

Gainors Meat Packing, Inc., brought an action in the Huron Circuit
Court against Home-Owners Insurance Company, its insurer,
seeking full payment of the policy limits for fire damage to its plant
and other losses. Gainors also sought § 2006(4) penalty interest
and prejudgment interest pursuant to MCL 600.6013. The court,
M. Richard Knoblock, J., appointed an umpire, who, with the
parties' respective appraisers, subsequently made an award to
Gainors. The court denied Gainors's motion for partial summary
disposition on the issue of penalty interest, ruling that when
parties submit to appraisal because they cannot agree on proof of
loss, § 2006(4) penalty interest is not available. The court denied
Gainors's motion for an award of prejudgment interest under MCL
600.6013. Gainors appealed.

Samuel C. and Cynthia A. Gardner, owners of an office building, brought an action in the Wayne Circuit Court against Harleysville Lake States Insurance Company, their insurer, seeking payment of a claim for losses caused by the rupture of frozen water pipes. The parties stipulated to a partial payment and the resolution of the rest of the claim through an appraisal process. The appraiser awarded, and Harleysville paid, a sum to the Gardners. The court, Isidore B. Torres, J., denied the Gardners' summary disposition motion for § 2006(4) penalty interest, ruling that the proof of loss submitted by the Gardners to Harleysville was not satisfactory because it did not comply with Harleysville's written specifications for what constitutes a satisfactory proof of loss. The court, however, granted the Gardners' summary disposition motion for prejudgment interest pursuant to MCL 600.6013. The Gardners appealed, and Harleysville cross-appealed.

The Court of Appeals consolidated the cases and *held*:

1. MCR 7.215(J)(1) constrains this panel of the Court of Appeals to follow *Arco Industries Corp v American Motorist Ins Co*, 233 Mich App 143 (1998), and hold that a claim must not be reasonably in dispute before an insurer can be liable to its insured for § 2006(4) penalty interest. Were the panel not so constrained, it would hold that a first-party insured is entitled to penalty interest regardless of whether its claim is reasonably in dispute and that the "reasonably in dispute" provision applies only to third-party tort claimants.

2. The trial court in the *Griswold* case did not clearly err in finding that the plaintiff's claim was not reasonably in dispute and that none of the amount awarded by the appraisal panel was reasonably in dispute. The trial court correctly granted § 2006(4) interest on the portion of the appraisal award that was not paid within 60 days of receiving satisfactory proof of loss. The defendant cannot rely on caselaw holding that an insurer is given 60 days after the entry of an appraisal award to pay a claim. The statute on which that caselaw relied for its analysis has been repealed and replaced by a statute that lacks the relevant language of the repealed statute.

3. The trial court in the *Gainors* case appears to have effectively merged the issue of satisfactory proof of loss with the issue whether claims are reasonably in dispute when it concluded that, if there is reasonable dispute about the amounts of the claims, the proof of loss provided by the insured is not satisfactory. The correct analysis is that, if an insurer complies with the requirement of MCL 500.2006(3) to specify in writing the materials that consti-

tute a satisfactory proof of loss, and the insured complies by providing those materials, the proof of loss provided is satisfactory. Satisfactory proof of loss does not require agreement on the amount of the claimed loss. Because there are questions of fact in the *Gainors* case concerning whether any claim was reasonably in dispute, a remand is necessary for a determination by the trial court. Regarding the issue of prejudgment interest pursuant to MCL 600.6013, the plaintiff is not entitled to such interest because the defendant timely and voluntarily paid the appraisal award without challenging the amount and without any intervention by the trial court that could justify an award of such interest.

4. Satisfactory proof of loss is a question of fact rather than an issue resolved at the sole discretion of an insurer. Because the trial court in the *Gardner* case decided the question of satisfactory proof of loss on the basis of the pleadings alone, a remand is necessary for a factual determination of satisfactory proof of loss. The plaintiffs are not entitled to prejudgment interest under MCL 600.6013 because the defendant timely and voluntarily paid the appraisal award without challenging the amount and without any intervention by the trial court that could justify an award of such interest.

*Griswold,* affirmed.

*Gainors,* denial of prejudgment interest affirmed, denial of § 2006(4) penalty interest reversed, and case remanded for further proceedings.

*Gardner,* reversed and remanded for further proceedings.

*Donald M. Fulkerson* and *Fabian, Sklar & King, P.C.* (by *Michael H. Fabian*), for Griswold Properties, LLC, Gainors Meat Packing, Inc., and Samuel C. and Cynthia A. Gardner.

*Grotefeld & Denenberg, L.L.C.* (by *Todd B. Denenberg, Jeffrey R. Learned,* and *Gary R. Chopp*), for Lexington Insurance Company.

*Secrest Wardle* (by *Janet Callahan Barnes*) for Home-Owners Insurance Company.

*Braun Kendrick Finkbeiner P.L.C.* (by *William J. Ewald* and *Frederick C. Overdier*) for Harleysville Lake States Insurance Company.

Before: WHITBECK, C.J., and MURPHY and COOPER, JJ.

PER CURIAM. These three consolidated cases involve claims brought by first-party insureds against their insurers. In each case, the insurer delayed payment of the claim while disputing the amount of damages or requiring additional proof of loss documentation. Although the facts and some issues vary between these cases, in each case, the plaintiff has claimed eligibility for statutory penalty interest under MCL 500.2006(4), so we address that issue first and then turn to each case separately for consideration of its remaining issues.

## I. COMMON ISSUE IN THESE CONSOLIDATED CASES

The common issue that links these consolidated cases is whether a first-party insured is entitled to statutory penalty interest on an insurance claim when the insurer fails to pay the claim within the statutory period, irrespective of whether the amount of the claim was reasonably in dispute. Were we not bound to follow this Court's published opinion in *Arco Industries Corp v American Motorist Ins Co*, 233 Mich App 143; 594 NW2d 74 (1998), aff'd 462 Mich 896 (2000), we would find that the plain language of MCL 500.2006(4) entitles a first-party insured to 12 percent interest on claims not timely paid after satisfactory proof of loss was received by the insurer, even if the claim is reasonably in dispute. The express terms of MCL 500.2006(4) indicate that the "reasonably in dispute"[1] provision applies only to third-party tort claimants.

---

[1] The inquiry into whether a claim is "reasonably in dispute" is limited "to the 'difference' between the amount claimed by the insured and the amount, limited by the ultimate appraisal award, that an insurer does not legitimately dispute is owed under the policy." *Angott v Chubb Group of Ins Cos*, 270 Mich App 465, 484; 717 NW2d 341 (2006), lv den sub nom *Kilby v Chubb Group of Ins Cos,* 477 Mich 941; 723 NW2d 825 (2006). "The insurer cannot

Were we not bound by *Arco*, we would follow the reasoning of *Yaldo v North Pointe Ins Co*, 457 Mich 341, 348 n 4; 578 NW2d 274 (1998):

> Defendant's claim that our holding would negate the "reasonably in dispute" language of MCL 500.2006(4); MSA 24.12006(4) is based on a misreading of the statute. Its express terms indicate that the language applies only to third-party tort claimants. Where the action is based solely on contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute.

However, this Court in *Arco* declared that portion of *Yaldo* to be dictum, and we are bound to follow *Arco*.

We declare a conflict under MCR 7.215(J)(2), so that the inconsistency between the reasoning in *Yaldo* and the holding in *Arco*, and the plain language of the statute, may be considered more fully.

A private party may seek penalty interest under the Unfair Trade Practices Act (UTPA), MCL 500.2001 *et seq.*, when an insurer fails to timely pay a claim. MCL 500.2006(4). The purpose of imposing penalty interest is to punish insurers who employ " 'dilatory practices in settling meritorious claims . . . .' " *Angott v Chubb Group of Ins Cos*, 270 Mich App 465, 479; 717 NW2d 341 (2006), lv den sub nom *Kilby v Chubb Group of Ins Cos*, 477 Mich 941, 723 NW2d 825 (2006); *Arco, supra* at 148. The UTPA provides for the payment of an insurance claim within 30 days of "receipt of proof of amount of loss." MCL 500.2833(1)(p); MCL 500.2836(2).

MCL 500.2006 provides for the imposition of penalty interest for the late payment of an insurance claim, in relevant part, as follows:

---

be allowed to withhold all payment until the appraisal is complete and skirt, without penalty, earlier and timely payment of the $60,000 for which there was no reasonable dispute." *Id.*

(1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

(2) A person shall not be found to have committed an unfair trade practice under this section if the person is found liable for a claim pursuant to a judgment rendered by a court of law, and the person pays to its insured, individual or entity directly entitled to benefits under its insured's contract of insurance, or third party tort claimant interest as provided in subsection (4).

(3) An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days. If proof of loss is not supplied as to the entire claim, the amount supported by proof of loss shall be considered paid on a timely basis if paid within 60 days after receipt of proof of loss by the insurer. Any part of the remainder of the claim that is later supported by proof of loss shall be considered paid on a timely basis if paid within 60 days after receipt of the proof of loss by the insurer . . . .

(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has

refused payment in bad faith and the bad faith was determined by a court of law. The interest shall be paid in addition to and at the time of payment of the loss. If the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss. If payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due. Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

Relying on the plain language of MCL 500.2006(4), the Michigan Supreme Court, in *Yaldo, supra* at 347-349, found that a first-party insured is entitled to 12 percent interest regardless of whether the claim is reasonably in dispute. We agree that the plain language of MCL 500.2006(4) leads to that conclusion.

Had the Legislature intended to require a first-party insured to establish that its claim was not reasonably in dispute, as defendants insist, it would have included that language in the first sentence of MCL 500.2006(4). The Legislature imposed that requirement only on third-party tort claimants in the second sentence of subsection 4. This Court must assume that the omission of the requirement in the first sentence was intentional. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 209-210; 501 NW2d 76 (1993) (finding that if the Legislature had intended the standard of review under subsections 2 and 3 of MCL 418.861a be dependent on when the claim was initially filed, it would have expressly stated so as it did in other sections of the Worker's Disability Compensation Act).

However, as noted above, in *Arco, supra* at 147-148, this Court found that the *Yaldo* analysis of MCL 500.2006(4) was nonbinding dictum:

> At issue in *Yaldo* was the interpretation and application
> of the judgment interest statute, MCL 600.6013 . . . , and
> not the penalty interest statute. It is a well-settled rule that
> statements concerning a principle of law not essential to
> determination of the case are obiter dict[a] and lack the
> force of an adjudication. *Roberts v Auto-Owners Ins Co,* 422
> Mich 594, 597-598; 374 NW2d 905 (1985); *Auto-Owners Ins
> Co v Stenberg Bros, Inc,* 227 Mich App 45, 51-52; 575 NW2d
> 79 (1997). The portion of the *Yaldo* majority opinion
> discussing MCL 500.2006(4) . . . was not necessary to its
> decision of the issue before the Court and must therefore
> be regarded as merely dictum that is not binding on this
> Court . . . . Accordingly, *Yaldo* did not establish a rule of law
> with regard to the interpretation of MCL 500.2006(4) . . . .

The *Arco* Court relied on this Court's earlier analysis
in *Siller v Employers Ins of Wausau,* 123 Mich App 140;
333 NW2d 197 (1983). *Arco, supra* at 148. In *Siller,
supra* at 143-144, this Court found that an insurer may
refuse to pay a claim that is reasonably in dispute
regarding the amount or accuracy of the claim without
facing penalty interest. Although the Michigan Su-
preme Court affirmed *Arco,* it did so in a brief order
with no analysis. This Court subsequently followed
*Arco*'s rejection of *Yaldo* in *Marketos v American Em-
ployers Ins Co,* 240 Mich App 684, 697-698; 612 NW2d
848 (2000), rev'd in part on other grounds 465 Mich 407
(2001). More recently, this Court specifically held that it
would follow the "rule of law established in *Arco* rather
than the dicta in *Yaldo*" because it was bound to follow
that precedent by MCR 7.215(J)(1). *Angott, supra* at
478 and 480 n 8.[2]

---

[2] Judge MURPHY notes the following: In *Angott,* an opinion that I
authored, the panel was also presented with the issue regarding
whether the "reasonably in dispute" language of MCL 500.2006 only
pertained to third-party tort claimants for purposes of assessing
penalty interest. In *Angott,* the issue had arguably been waived below,
the plaintiff failed to even recognize or address the ruling in *Arco Industries*

We follow *Arco* because we are bound to do so, but if not constrained by *Arco*, we would follow the reasoning in *Yaldo* and find that the "reasonably in dispute" language of MCL 500.2006(4) applies only to third-party tort claimants; if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance, and benefits are not paid on a timely basis, the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute.

## II. *GRISWOLD PROPERTIES, LLC v LEXINGTON INS CO,* DOCKET NO. 263197

In addition to appealing the grant of penalty interest to plaintiff, defendant appeals as of right the trial court's order granting plaintiff's motion for summary disposition, and finding that plaintiff's claims were not reasonably in dispute. We affirm that order.

### A. FACTS AND PROCEDURAL HISTORY

Plaintiff corporation owns the Dime Building, a 23-story office tower located at 719 Griswold Street in the

---

that the *Yaldo* statement was dictum, the plaintiff failed to discuss, in any manner, the analysis in *Arco Industries*, and the plaintiff failed to recognize and address *Marketos* and the slew of other opinions that were consistent with *Arco Industries*. The plaintiff's argument in *Angott* was not fully developed on appeal, as in the present case, the argument was one of many appellate issues, the others of which were given more focus and weight by the parties, and the plaintiff never demanded that *Arco Industries* be overruled or subjected to a conflict panel. For these reasons, and under the circumstances, we did not contemplate requesting that a conflict panel be convened, but merely followed *Arco Industries* as binding precedent, which it was under MCR 7.215(J)(1). On further consideration, and with the benefit of more thoroughly developed arguments, I have come to the conclusion that the *Yaldo* Court, dictum or not, correctly interpreted MCL 500.2006. Accordingly, I join Judge COOPER, as well as Chief Judge WHITBECK, in the call for conflict resolution.

city of Detroit. Plaintiff's property is insured through defendant insurance company; the policy includes coverage for loss of rental value. The Dime Building, constructed in 1913, required significant repair work to prepare the building to be compatible with modern business. During construction, plaintiff negotiated leases with several new tenants who were to take occupancy once their quarters were ready, and plaintiff also signed leases with various current tenants for larger spaces. However, plaintiff's progress was impeded by water damage on two occasions when a city of Detroit water main ruptured.

The water main first ruptured on April 26, 2001, flooding the basement and sub-basements of the Dime Building. Plaintiff asserted that the water main rupture caused $137,587.70 in property damage. Defendant paid plaintiff $110,072.26 in relation to this claim sometime before December 5, 2002. Plaintiff asserted that its outstanding property damage claim related to that incident, less the deductible, was $17,515.44. Plaintiff also asserted that it was required to postpone the move-in dates of two tenants from July 1, 2001, to September 1, 2001, and calculated its total loss of rents from the April 26, 2001, incident at $218,588.63.

The water main ruptured again on August 16, 2001, causing even more substantial damage. Plaintiff claimed a total of $1,091,127.91 in property damage related to that incident, of which defendant paid $386,198.40. Plaintiff asserted that it was entitled to an additional $694,929.51, less the deductible. Plaintiff also asserted that several tenants who were to take occupancy from September 2001 to early 2002 were postponed for several months, and several new tenants terminated their leases. Plaintiff calculated its total loss of rent from the August 16, 2001, incident at $1,112,068.72.

Plaintiff filed a combined proof of loss for both incidents on March 4, 2002. Defendant informed plaintiff that the proof of loss was unsatisfactory because it combined the losses from both water damage incidents into one claim. Defendant also informed plaintiff that it had not provided sufficient documentation to prove its loss. Plaintiff resubmitted its proof of loss along with significant documentation on December 11, 2002. While awaiting defendant's initial advances on these claims, however, plaintiff depleted its funds and could no longer complete repairs. In addition, Burton Brothers Construction, who provided emergency cleanup at the site, filed a lien against the property because defendant had not paid its bill.

Defendant still had not paid the loss of rent damages or the remainder of the claimed property damages by May 28, 2003. At that time, plaintiff demanded that defendant submit to appraisal as provided by the insurance policy.[3] Plaintiff appointed an appraiser and demanded that defendant select an appraiser within 20 days. Defendant responded that appraisal was premature because coverage issues remained regarding the claims for damage to the electrical substation and from loss of rent.[4] Instead of appointing an appraiser, defendant demanded that an authorized agent of plaintiff submit to an examination under oath (EUO). Defendant also provided plaintiff with a detailed outline of the problems with the documentation presented to support plaintiff's proof of loss and requested more information.

---

[3] The insurance policy provides for an appraisal when the parties cannot agree on the amount of loss (Insurance Policy, p 4, § D.5). The appraisal process is described in more detail in MCL 500.2833(1)(m).

[4] Plaintiff alleged that defendant had not raised any coverage issues prior to that time.

As a result of defendant's refusal to submit to appraisal, plaintiff filed suit on October 16, 2003. Plaintiff asserted that defendant's demand for an EUO was an attempt to "conduct one-sided discovery . . . and a bad faith attempt to obtain an unfair advantage in the Appraisal proceedings." Plaintiff sought declaratory relief ordering defendant to submit to appraisal and denying defendant's request for an EUO.

Plaintiff filed an amended complaint on June 22, 2004, adding a breach of contract count and alleging that defendant acted in bad faith during the investigation and in failing to timely pay plaintiff's claims. Plaintiff asserted that defendant was indebted to it on the claims and was required to pay 12 percent penalty interest under MCL 500.2006. On October 1, 2004, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10), seeking an order compelling defendant to submit to an appraisal.

The trial court conducted a hearing on plaintiff's motion and denied defendant's request to conduct an EUO; the court stated that "we're beyond the period of time for examination under oath." In support of its motion for summary disposition, plaintiff argued that it had produced all requested documents and gave defendant's accountants full access to its files. It further asserted that it only filed suit when defendant refused to submit to the appraisal process. Plaintiff requested that the court compel defendant to submit to appraisal and award it 12 percent penalty interest on the remainder of the claim. The trial court ordered both parties to submit to appraisal, but withheld its opinion in relation to interest until the appraisal process had been completed.

At the conclusion of the appraisal process, the appraisal panel awarded plaintiff $137,587.70 for building

damage related to the April 26, 2001, incident. The award was identical to the amount previously claimed by plaintiff. The panel awarded $38,588.63 in lost rent in relation to the April incident, which was significantly lower than the amount requested. In relation to the August 16, 2001, incident, the panel awarded plaintiff $1,091,127.91 for damage to the building, which was the amount requested by plaintiff in its original claim. The panel also awarded plaintiff $1,034,314.49 in lost rent, which was only slightly lower than the requested amount.

Plaintiff filed another motion for summary disposition under MCR 2.116(C)(10), seeking the assessment of interest under MCL 500.2006. Plaintiff contended that it was entitled to statutory penalty interest from 60 days following its December 11, 2002, submission of proof of loss until the date of full payment, February 23, 2005. The trial court conducted a hearing on plaintiff's motion for penalty interest and concluded:

> Unfortunately[,] I'm going to have to have an evidentiary hearing because[,] first of all, both lawyers understand that *Arco* had a tortured history. It was decided only after at least one remand, maybe two. Secondly, I'm now persuaded by reading the heading and looking at the lawyers who represented the parties at the Court of Appeals that it is a first[-]party case and that an issue for me to decide is . . . was the claim reasonably denied. So[,] I'm going to set it for an evidentiary hearing like it or not.

The court further noted that it agreed with plaintiff that defendant had acted in a dilatory manner.

The court then conducted a two-day evidentiary hearing to determine whether plaintiff's claim was reasonably in dispute. The court found that defendant lacked a "reasonable basis for withholding the amounts claimed by Plaintiff . . . ." However, the trial court also

ruled that it was "constrained to follow <u>Yaldo v North-point</u> [sic] in finding that the first[-]party claimant is entitled to twelve percent interest and that the ... reasonably in dispute rubric or talisman is not applicable." The trial court granted plaintiff's motion for summary disposition with respect to interest, and ordered defendant to pay plaintiff 12 percent interest, totaling $309,276.

### B. REASONABLENESS OF DISPUTE

As noted, binding precedent holds that a first-party insured must establish that its claim was not reasonably in dispute to be entitled to penalty interest under the UTPA. *Arco, supra* at 148. Here the trial court conducted a two-day evidentiary hearing and determined, after both parties presented evidence, "that there was no reasonable basis for withholding the amounts claimed by Plaintiff." We agree.

We review a trial court's findings of fact for clear error. MCR 2.613(C); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 171; 530 NW2d 772 (1995). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

Plaintiff's primary witness was Ethan Gross, an adjuster retained by plaintiff to analyze plaintiff's losses. Gross testified that he submitted a preliminary rent loss claim to defendant in October 2001, but could not make a final rent loss claim until December 2002. He stated that in addition to the documentation he submitted, defendant's accountant, Suzanne Tarchala, requested additional documentation in relation to the rent loss claims, and he provided everything that was requested. Gross testified that Tarchala spent time in

plaintiff's offices reviewing documents and never asked to question any tenants or contractors while investigating the claim. And Gross added that he provided Tarchala with contact information for plaintiff's vice-president, John Moore, including an office phone and a cell phone number, so that she could question him, and offered to assist her if she had any difficulty reaching Moore directly.

Tarchala admitted that she had spent time in plaintiff's office and was given access to plaintiff's records, and that she had met with Moore at the beginning of her investigation and was told that she could contact or meet with Moore again. She asserted that the problem with the rent loss claims arose because plaintiff could not establish that the tenants would have been able to move in on the anticipated dates. Tarchala also noted inconsistencies in the documents, such as inconsistent rent rolls, and she therefore asserted that the entire rent loss was reasonably in dispute. However, we note that Tarchala was provided access to persons who could have answered her questions, clarifying any inconsistencies and confirming move-in dates.

Defendant also presented the deposition testimony of William Bradshaw, a CPA who served as its appraiser during the appraisal process. Bradshaw testified that he disagreed with Gross and the umpire regarding the building damage award related to the August event and regarding the lost rent claims related to both incidents. He argued that plaintiff could not adequately establish when the tenants would actually be able to move into the building, primarily because, irrespective of the water damage, there could have been delays in the ordinary course of the construction project.

Finally, defendant presented the deposition testimony of James Terlecki, an insurance adjuster with

defendant's parent company, AIG, who worked on the August building damage claim. Terlecki asserted that he continually encouraged Gross to segregate the claims from the April and August events and to make a full presentation of plaintiff's claim as soon as possible. Terlecki stated that the final claim for the August building damage included $150,000 for "cleaning of switch gear." Defendant hired a chemist to inspect the switchgear. The chemist asserted that normal basement conditions, and not the water main rupture, caused the damage to the switchgear, and recommended that only $14,000 in repairs be conducted. Terlecki ultimately recommended that defendant pay plaintiff a total of $900,000 for damage to the building.

Terlecki also recommended that defendant conduct an EUO of Moore in order to resolve any remaining issues. However, plaintiff demanded appraisal that same week. Terlecki asserted that plaintiff originally agreed to the EUO, but later cancelled the scheduled appointment. We note again that, according to the testimony of Gross, Moore was available to answer questions, and defendant's agents did not follow through and ask their questions.

To summarize, no part of the April 2001 building damage claim was reasonably in dispute, or in fact even disputed. Giving defendant all benefit of the doubt, only $136,000[5] of the August 2001, building damage was even potentially reasonably in dispute. Despite defendant's arguments that rent loss claims were not properly documented and were therefore reasonably in dispute, we agree with the trial court that plaintiff presented significant evidence from which defendant could easily have valued plaintiff's rent loss claims. We

---

[5] This amount is the difference between plaintiff's and defendant's estimates of repairing the switchgear.

note that defendant's agents were either given or allowed access to all necessary documents and resources to determine the value of plaintiff's loss of rent claim, such as leases, rent rolls, pre-event construction schedules, and Moore's recollection of oral negotiations with potential tenants.

Of all the claimed losses then, if our review were de novo, we would find that only $136,000 was potentially reasonably in dispute. However, the trial court conducted an evidentiary hearing and made a factual finding that none of the amount awarded by the appraisal panel was reasonably in dispute. We can find no clear error in that finding. We therefore affirm the trial court's grant of interest under MCL 500.2006(4) on the portion of the appraisal awards that was not paid within 60 days of receiving satisfactory proof of loss.

### C. EFFECT OF APPRAISAL ON PENALTY INTEREST

Defendant also argues that because the parties engaged in the appraisal process, according to *O J Enterprises, Inc v Ins Co of North America*, 96 Mich App 271; 292 NW2d 207 (1980), the insurer is given 60 days after the entry of an appraisal award to pay a claim.

*O J Enterprises, supra* at 274, expressly based its analysis on MCL 500.2832. MCL 500.2832 provided for the payment of claims, in relevant part, as follows:

> When loss payable. The amount of loss for which this Company may be liable shall be payable within sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided[, i.e., an appraisal award].

However, MCL 500.2832 was repealed by 1990 PA 305. MCL 500.2833 replaced it. Although MCL

500.2833(1)(m) addresses appraisal, MCL 500.2833(1)(p) specifically provides that "the loss is payable within 30 days after receipt of proof of amount of loss" without any reference to an appraisal award. MCL 500.2833(2) partially reincorporated MCL 500.2832, providing, "Except as otherwise provided in this act, each fire insurance policy issued or delivered in this state pursuant to subsection (1) shall contain, at a minimum, the coverage provided in the standard fire policy under former section 2832." The Legislature "otherwise provided" with respect to the time period in which loss is payable when it enacted MCL 500.2833(1)(p); therefore, the language of MCL 500.2832 regarding the same topic was not incorporated in MCL 500.2833(2). Moreover, the period in which an insurer had to pay as found in MCL 500.2832 was not a "coverage" provision and was thus not incorporated in MCL 500.2833(2). Additionally, "[w]hen a statute is repealed and another is enacted that covers the same subject area, a presumption arises that any change in wording reflects a legislative intent to change the statute's meaning." *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 399; 605 NW2d 685 (1999), citing *Williams v Auto Club Group Ins Co (On Remand)*, 224 Mich App 313, 319; 569 NW2d 403 (1997).

Because the statute on which *O J Enterprises* relied has been repealed and replaced with a statute that conspicuously lacks the specific language relevant to the holding in that case, *O J Enterprises* is no longer relevant on this issue and defendant's argument lacks merit.

### III. *GAINORS MEAT PACKING, INC v HOME-OWNERS INS CO,* DOCKET NO. 265278

Plaintiff appeals as of right the trial court's order denying its motion for judgment interest pursuant to

MCL 600.6013 and dismissing the case in defendant's favor. We affirm that order. Plaintiff also appeals the trial court's order denying its motion for partial summary disposition seeking interest pursuant to MCL 500.2006(4). We reverse that order and remand for proceedings consistent with this opinion.

A. FACTS AND PROCEDURAL HISTORY

The building that housed plaintiff's meat packing business caught fire on July 18, 2002, allegedly destroying the property. Defendant insurance company insured plaintiff's property. On October 29, 2002, plaintiff submitted its "sworn statement in proof of loss" to defendant, with a breakdown of losses and repair bids from contractors. In the sworn statement in proof of loss, plaintiff claimed $795,938.24 for damage to the building, $684,094.76 for lost contents, and $134,889.00 for business interruption, for a total of $1,614,917.[6] However, plaintiff requested only its policy limit of $1,051,370.

Defendant admitted that certain claimed losses were covered under the policy and timely made a partial payment of $289,088.76. However, defendant refused to pay the remainder, asserting that the fire was isolated to the facility's attic and did not destroy the property, and that plaintiff therefore exaggerated its losses. Defendant sent an inspector to plaintiff's facility to inspect the damage; after the inspection, defendant argued that the value of the damage caused by the fire was only $292,000, and that plaintiff was fraudulently trying to

---

[6] The amount requested by plaintiff represented the replacement-cost value of the damaged property. Pursuant to the insurance policy, defendant was first required to pay plaintiff the actual-cost value of the loss and then pay the cost of replacing the property, i.e., the replacement-cost value, if plaintiff actually replaced the property.

make defendant pay for code updates in areas not affected by the fire. Plaintiff requested that defendant provide factual support for its calculated losses, but defendant refused. The parties agreed to submit their dispute to appraisal and appointed their appraisers pursuant to MCL 500.2833(1)(m); however, the parties could not agree on a neutral umpire.

Plaintiff filed suit against defendant on March 14, 2003, requesting the trial court to appoint a disinterested umpire. Plaintiff further alleged that it was entitled to the entry of judgment on the future appraisal award and would be entitled to the imposition of 12 percent penalty interest pursuant to MCL 500.2006(4), given defendant's failure to timely pay its claim. Plaintiff further requested the trial court to order defendant to provide a factual basis for and a breakdown of its calculations of plaintiff's losses.

The trial court conducted a hearing on June 2, 2003, and agreed that defendant had not provided plaintiff with a complete calculation of plaintiff's losses because it specifically excluded the cost of certain repairs. The court ordered defendant to provide its calculations to plaintiff within 21 days. The court also requested the attorneys to compile a list of potential umpires, and subsequently appointed an umpire.

At the conclusion of the appraisal proceedings, the umpire and both parties' appraisers unanimously agreed to the following award: Building Replacement Cost, $556,307.83; Building Actual Cash Value, $388,968.00; Personal Property Replacement Cost, $358,750.00; Personal Property Actual Cash Value, $287,000.00. The panel also determined that plaintiff was entitled to the policy limit on certain other losses: Personal Property of Others, $20,000.00; Code and Ordinance, $25,000.00; Demolition, $25,000.00; Sign,

$1,500.00. Defendant timely paid the appraisal award. In a separate appraisal award, the umpire and plaintiff's appraiser agreed on an award of $140,725 for business interruption, which defendant also timely paid.

Based on the appraisal award, plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(10), seeking penalty interest pursuant to MCL 500.2006(4). After a hearing, the trial court denied plaintiff's motion, reasoning that when the parties submit to appraisal because they cannot agree on the proof of loss, the penalty interest provision is not triggered. The court relied on *O J Enterprises, Inc, supra,* for the proposition that "satisfactory proof of loss" only exists when the proof of loss is not in dispute.

Plaintiff then filed a motion seeking the entry of the appraisal award as the trial court's final judgment, and seeking prejudgment interest on the award pursuant to MCL 600.6013. After a hearing, the trial court denied the motion and dismissed the case with prejudice, reasoning that because defendant had promptly paid the award and no judicial intervention was required to enforce the payment of the appraisal award, plaintiff was not entitled to prejudgment interest under MCL 600.6013. Plaintiff filed this appeal.

### B. SATISFACTORY PROOF OF LOSS

Plaintiff appeals the trial court's order denying its motion for partial summary disposition seeking penalty interest pursuant to MCL 500.2006(4).

This Court reviews de novo the grant or denial of a motion for summary disposition. Questions of statutory interpretation are also reviewed de novo. *Angott, supra* at 475. However, whether an insurance claim is reasonably in dispute is a question of fact, see *id.* at 477-478,

which this Court reviews for clear error, MCR 2.613(C). In this case, the trial court based its denial of plaintiff's motion on a finding that satisfactory proof of loss, as required by MCL 500.2006(4), was not provided and so the penalty interest provision was not triggered. However, it also appears that the trial court effectively merged the issue of satisfactory proof of loss with the issue of whether damages are reasonably in dispute, concluding that if there is reasonable dispute about the amounts of damages, then the proof of loss provided by an insured is not satisfactory. We disagree with that conclusion.

Here, plaintiff filed a sworn statement of loss with a detailed breakdown of damage and repair bids from contractors. Defendant paid a portion of the claim, but declined to pay the rest, asserting that plaintiff had exaggerated its losses. What defendant is statutorily required to do, however, in that situation, is "specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." MCL 500.2006(3). Defendant failed to provide plaintiff with written notification of what documents or other evidence it would accept as proof of loss. This Court has found that failure to comply with this statute is essentially acceptance of the proof of loss submitted:

> [T]he court must take into consideration whether defendant properly rejected the proof of loss by specifying "in writing the materials that constitute a satisfactory proof of loss[.]" MCL 500.2006(3). If defendant did not comply with this provision, plaintiff was excused from submitting a proof of loss and the matter shall proceed as if a satisfactory proof of loss were submitted. *Medley v Canady*, 126 Mich App 739, 745; 337 NW2d 909 (1983) ("Further, reading MCL 500.2006(3) and 500.2006(4) together, we conclude that failure to specify in writing the materials

which constitute satisfactory proof of loss excuses the requirement of said proof of loss in MCL 500.2006[4].").
[*Angott, supra* at 486].

The policy reason for such a holding is clear—if an insurer is not held to the requirement to provide written notice of specific issues in the proof of loss and specific remedies that will render the proof of loss satisfactory, then the insured is defenseless against blanket rejections. If the insurer does properly respond with sufficient detail in its rejection of a loss statement, the insured is properly positioned to address any issues raised. Also, when the insured responds to the insurer's written request for additional documentation or evidence, the contours of any reasonable dispute about the amount of loss should be fairly well delineated.

More specifically, the insurer's written notification of deficiencies in the proof of loss serves to separate aspects of the claim for which the proof of loss is satisfactory from aspects of the claim for which it is not. Just this situation was contemplated in *Angott, supra* at 485-486.

> On remand, the trial court is to first determine whether plaintiff supplied defendant with a satisfactory proof of loss with respect to any amount claimed in the sworn statement in proof of loss so that the 60-day period began to run. If there was a failure to supply a satisfactory proof of loss with regard to a portion of the claim, the court may still award penalty interest if there was a satisfactory proof of loss with respect to a separate portion of the claim. . . .
>
> If the trial court determines that plaintiff supplied a satisfactory proof of loss, or that it was excused, the court must then determine, with input from the parties, that amount of the claim that was not reasonably in dispute, as governed and guided by our directions above on the matter, which assessment can be viewed at the 60-day mark following submission of the proof of loss or anytime thereafter before payment.

Because defendant here failed to respond to plaintiff's sworn statement of loss in writing, plaintiff had no opportunity to remedy any defects, and the trial court had no basis for determining which portions of the claim defendant challenged, or which portions of the loss statement it deemed unsatisfactory. Because defendant failed to comply with MCL 500.2006(3), we find that "plaintiff was excused from submitting a proof of loss and the matter shall proceed as if a satisfactory proof of loss were submitted." *Angott, supra* at 486.

We also find, based on the plain language of the statute, that satisfactory proof of loss does not equate to agreement as to the amount of damages. MCL 500.2006(3) simply requires insurers to "specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days"; it does not require insurer and insured to reach agreement as to the amount of damages. An insured may supply such materials as are requested, and a reasonable dispute as to the amount of damages may still ensue. We here hold that if an insurer complies with the statutory requirement to specify in writing "the materials that constitute a satisfactory proof of loss," and an insured complies by providing those materials, the proof of loss provided is satisfactory. The insurer may disagree with the amount of loss claimed, at which point the damages are in dispute, but the insurer may not argue that the insured has failed to supply satisfactory proof of loss. Whether the damages are reasonably in dispute is another inquiry entirely.

Here, defendant insurer disagreed with plaintiff insured's calculation of the amount of damage caused by the fire. Specifically, defendant asserted that the fire did not destroy the property, as plaintiff contended, and

that because the fire was contained in a particular area of the facility, damage claims for other areas were unreasonable.[7] Defendant argued that the unanimous appraisal awards support the idea that plaintiff's claims were grossly exaggerated: plaintiff was awarded $388,968 in building loss when it had requested $795,938.24 and was awarded $297,000 in loss of personal property when it had requested $684,094.76. We agree with defendant that these disparities suggest there may have been reason to dispute plaintiff's figures; however, we also note that the total appraisal award of $1,049,691 was very near the policy limits of $1,051,370, the maximum that plaintiff could recover despite its actual damages.

Because we find there are questions of fact as to whether any damages were reasonably in dispute and, if any were, what portion of the total damage was reasonably in dispute, we direct the trial court on remand to make those determinations. These questions were not previously addressed in the trial court because the trial court based its decision on its opinion that satisfactory proof of loss was not provided.

We note that because we find that satisfactory proof of loss does not require agreement of the parties as to the amount of damages, but is rather the process of the insured providing the documents and evidence required by the insurer to begin processing the claim, we reject defendant's argument that proof of loss is not satisfactory until the appraisal process is complete.

In addition, defendant refers to a provision in the insurance policy issued to plaintiff allowing it to withhold payment until the completion of appraisal. How-

---

[7] At one point, defendant even suggested that plaintiff had caused the fire itself because of its unsuccessful attempts to sell the business.

ever, plaintiff argues the provision is unenforceable under MCL 500.2836(2), which requires payment "within 30 days after receipt of proof of the amount of the loss, notwithstanding the provisions of any contract or statute to the contrary." The former MCL 500.2832, repealed in 1990, allowed an insurer to withhold payment until the completion of appraisal without penalty: "The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an [appraisal] award as herein provided." However, that language was omitted from the replacement act. On the subject of appraisal, MCL 500.2833(m) addresses only the procedure for appraisal, not the guidelines for when a loss is payable.

Unlike MCL 500.2006(3), which speaks only to "the materials that constitute a satisfactory proof of loss," MCL 500.2836(2) addresses "proof of the amount of the loss." We find this to be a distinction with an appreciable difference. Where the parties to a dispute employ the appraisal process as the means of agreeing on the amount of the loss, the appraisal award triggers the 30-day payment window in MCL 500.2836(2): "Except as otherwise provided in section 2845, losses under any fire insurance policy shall be paid within 30 days after receipt of proof of the amount of the loss, notwithstanding the provisions of any contract or statute to the contrary." However, this reading of MCL 500.2836(2) does not interfere with the operation of MCL 500.2006(4), under which penalty interest is triggered by receipt of "satisfactory proof of loss," not satisfactory proof of the amount of loss.

### C. JUDGMENT INTEREST

Plaintiff also appeals the trial court's denial of its motion for judgment interest pursuant to MCL 600.6013. An award of interest pursuant to MCL 600.6013 is reviewed de novo. *Angott, supra* at 487.

We find that plaintiff is not entitled to prejudgment interest under MCL 600.6013 because defendant timely and voluntarily paid the appraisal award without challenging the amount and without any intervention by the trial court.

The purpose of the prejudgment interest statute, MCL 600.6013, is to "compensate the prevailing party for delay in receiving money damages." *McCahill v Commercial Union Ins Co*, 179 Mich App 761, 777; 446 NW2d 579 (1989). The imposition of prejudgment interest is allowed when a "money judgment" is entered. *Angott, supra* at 487, quoting MCL 600.6013(1). " 'For the purpose of the judgment interest statute, a money judgment is one that orders the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred.' " *Angott, supra* at 487, quoting *In re Forfeiture of $176,598*, 465 Mich 382, 386; 633 NW2d 367 (2001).

We find the portion of *O J Enterprises, supra* at 273, related to MCL 600.6013 relevant here. In that case, as in this one, the plaintiff filed suit related to recovery under its insurance policy issued by the defendant, and the trial court was ultimately required to appoint a neutral umpire. Following the appraisal process, the defendant timely paid the appraisal award. There the trial court subsequently entered a money judgment in the amount of the appraisal award and ordered the defendant to pay prejudgment interest under MCL 600.6013, but this Court vacated the award of prejudgment interest, reasoning:

> This is not a case where the insurer contested the amount of loss determined by the appraiser so that judicial intervention is necessary to settle the award . . . . Here the insurer acquiesced to the umpire's decision and paid the full award within 60 days. In such cases, entry of a judgment accompanied by 6 per cent statutory interest is inappropriate. [*O J Enterprises, supra* at 275.]

Here, the trial court's intervention in the appraisal process was limited to the appointment of a neutral umpire because the parties could not agree on a neutral umpire. Defendant timely paid the appraisal award without challenging or requesting any modification to the award. Accordingly, the trial court was not required to intervene and compel payment of the appraisal award. The trial court was not required to enter a money judgment and plaintiff was, therefore, not entitled to prejudgment interest. We affirm the denial of plaintiff's motion for judgment interest.

#### IV. *GARDNER v HARLEYSVILLE LAKE STATES INS CO,* DOCKET NO. 268335

Plaintiff Cynthia A. Gardner appeals as of right the trial court's order denying her and Samuel C. Gardner's[8] motion for summary disposition[9] seeking penalty interest pursuant to MCL 500.2006(4). On cross-appeal, defendant Harleysville appeals the trial court's order awarding plaintiffs prejudgment interest under MCL 600.6013.

##### A. FACTS AND PROCEDURAL HISTORY

Plaintiffs owned a commercial office building at 561

---

[8] Plaintiff Samuel C. Gardner died on October 13, 2005, four months before the current claim of appeal was filed.

[9] Although plaintiffs did not specify which court rule they relied on, the trial court treated the motion for summary disposition as being filed under MCR 2.116(C)(10).

East Jefferson Street in the city of Detroit. On January 27, 2003, water damage caused by the rupture of two frozen water pipes was discovered at the property. Apparently, the rupture occurred in offices occupied by Yvette Williams. Plaintiffs had served Williams a notice to quit on January 7, 2003, but they were unsure when Williams actually vacated the premises.

Plaintiffs filed a proof of loss with defendant, the insurer of the property, on February 11, 2003, asserting that their loss of rent was between $3,500 and $15,000 each month, with a total loss of rent for an estimated six-month period of $54,000, and an estimated building repair cost of $400,000.

Defendant requested and took Examinations Under Oath (EUO) of both plaintiffs and requested various documents related to the claimed loss. Defendant then denied the claim,[10] finding the proof of loss was unsatisfactory because it included estimates only and no supporting documentation. Defendant also notified plaintiffs, by a separate letter, of the required documentation to remedy the proof of loss. Plaintiffs submitted 62 pages of contractor estimates for damage to the building, but did not turn over the other documents requested by defendant. Plaintiffs then filed an amended proof of loss, changing only the building repair figure to $331,322.34. Defendant again rejected the claim.

Plaintiffs demanded that defendant submit to appraisal pursuant to MCL 500.2833(1)(m)[11] and immediately pay any amount not reasonably in dispute. Defendant responded that appraisal was inappropriate because the damage was not covered under the insur-

[10] The day after defendant rejected plaintiffs' claim, Cynthia filed for Chapter 11 bankruptcy.

[11] That subsection provides, in relevant part:

ance policy[12] and because plaintiffs had yet to submit a satisfactory proof of loss, as they had submitted only estimates.

Plaintiffs filed suit requesting the court to compel appraisal. Plaintiffs alleged that defendant had breached the insurance policy by failing to fairly investigate and timely pay their claim and failing to submit to appraisal. The parties subsequently stipulated that defendant would make a merit payment of $136,062.51, and the balance of the claim would be resolved through the appraisal process. On January 25, 2005, the appraisers agreed on an award of $350,317 in building damage, temporary repairs, and loss of rent without itemizing the award. Defendant paid the balance of the award on March 30, 2005.

Plaintiffs filed a motion for summary disposition seeking the imposition of penalty interest under MCL 500.2006(4). Specifically, plaintiffs contended that defendant violated MCL 500.2833(1)(p) and MCL 500.2836(2) by failing to pay the claims within 30 days of receiving the proof of loss. Plaintiffs asserted that the

That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. . . .

[12] Section I, page 3 of the insurance policy includes the following coverage exclusion:

f. Frozen Plumbing: Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the water supply if the heat is not maintained.

proof of loss they submitted was satisfactory, but requested an evidentiary hearing if the court was unable to determine whether the proof of loss was satisfactory.

Defendant argued that the penalty interest statute was not triggered because "satisfactory" proof of loss was never produced. Defendant noted that it repeatedly requested the submission of specific documents that were never presented. Because plaintiffs never submitted the requested documents as to current tenants, defendant could not determine what percentage of the building was actually occupied at the time of loss. Defendant also could not ascertain whether plaintiffs were at fault for the lack of heat in the affected area because plaintiffs never submitted the requested documents from DTE Energy.

Without conducting an evidentiary hearing as requested by plaintiffs, the trial court found that the proof of loss produced by plaintiffs was not satisfactory, and for that reason denied plaintiff's motion for summary disposition with respect to the issue of penalty interest. The trial court stated:

> [T]he plain language of MCL 500.2006 permits the insurer to establish what constitutes "satisfactory" proof of loss, provided that the insurer does so, in writing, not later than 30 days after receipt of a claim. Plaintiffs do not dispute that Defendant timely notified them, in writing, of the materials that constituted a satisfactory proof of loss claim. Plaintiffs have failed to demonstrate that they submitted a proof of loss statement to Defendant that was deemed "satisfactory" and accepted by Defendant.

### B. SATISFACTORY PROOF OF LOSS

This Court reviews de novo the grant or denial of a motion for summary disposition. Questions of statutory interpretation are also reviewed de novo. *Angott, supra* at 475.

Satisfactory proof of loss was the dispositive issue in this motion for summary disposition. MCL 500.2006(3) provides, in part: "An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." Although the insurer then has discretion to determine what proof will be satisfactory, it cannot be that such discretion is boundless. We note that with respect to the building damage, plaintiffs did provide an extensive contractor estimate. Although they did not provide every document requested by defendant, some of defendant's requests seem unreasonable; for example, plaintiffs apparently attempted to get the DTE documents, although they were unsuccessful. As to proof of rental loss, however, the record indicates that plaintiffs provided none of the requested documents.

We find that whether proof of loss was satisfactory is a question of fact,[13] rather than an issue resolved at the sole discretion of the insurer. Because the trial court decided the question based on the pleadings alone, without taking testimony from the parties or other witnesses, we reverse the grant of summary disposition to defendant and remand for the trial court to consider the question.

As noted above, we hold that based on the plain language of the statute, satisfactory proof of loss does not require agreement as to the amount of claimed loss; MCL 500.2006(3) simply requires insurers to "specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days."

---

[13] Clearly there is an exception, and the question becomes one of law, rather than fact, if a plaintiff is excused from submitting proof of loss by the operation of MCL 500.2006(3). See *Angott, supra* at 486.

The question of whether proof of loss is satisfactory is a distinctly different inquiry than the question of whether the damages are reasonably in dispute.

We note that the trial court's holding here preempted inquiry into what portion, if any, of the claimed damages were reasonably in dispute. However, the insurer is required to pay any undisputed portion even where appraisal is required to reach agreement on the total amount of damage, and even under *Arco, supra,* plaintiff is entitled to penalty interest on that portion of the claim that was not reasonably in dispute.

### C. JUDGMENT INTEREST

Although the trial court concluded that plaintiffs were not entitled to penalty interest under MCL 500.2006(4), it determined that plaintiffs were entitled to prejudgment interest from the date on which the complaint was filed. The trial court entered a separate order assessing prejudgment interest against defendant in the amount of $8,216.36.

Similar to our analysis of the judgment interest issue in *Gainors* (part III[C] of this opinion), we find here that plaintiff is not entitled to prejudgment interest under MCL 600.6013 because defendant timely and voluntarily paid the appraisal award without challenging the amount and without any intervention by the trial court.

### V. CONCLUSION

In *Griswold v Lexington Ins Co,* Docket No. 263197, we affirm the trial court's finding that plaintiff's claimed amounts of damage were not reasonably in dispute, and we therefore also affirm the trial court's grant of penalty interest to plaintiff. However, we

reverse that part of the trial court's order finding that MCL 500.2006(4) requires payment of penalty interest to first-party insureds regardless of whether a claim is reasonably in dispute.

In *Gainors v Home-Owners Ins Co,* Docket No. 265278, we affirm the denial of plaintiff's motion for judgment interest. However, because questions of fact exist as to what portion, if any, of plaintiff's losses were reasonably in dispute, we reverse the denial of plaintiff's motion for partial summary disposition, and remand for proceedings consistent with this opinion.

In *Gardner v Harleysville Lake States Ins Co,* Docket No. 268335, we reverse the trial court's order of prejudgment interest for plaintiff. And because a question of fact exists as to whether plaintiffs provided satisfactory proof of loss to defendant, we reverse the denial of plaintiff's motion for summary disposition and remand for proceedings consistent with this opinion.

We note again that because we have followed *Arco* only because we must, we declare a conflict under MCR 7.215(J)(2), so that the inconsistency between the reasoning in *Yaldo* and the holding in *Arco,* and the plain language of the statute, may be more fully considered.

We do not retain jurisdiction in any of these three matters.