*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEMBERSELECT INSURANCE COMPANY,

        Plaintiff/Counterdefendant-Appellee,

v

SAM YONO and MUNTAHA YONO,

        Defendants/Counterplaintiffs-
        Appellants.

UNPUBLISHED
May 08, 2025
8:34 AM

No. 369756
Oakland Circuit Court
LC No. 2019-175148-CK

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Sam and Muntaha Yono (the Yonos) appeal as of right the trial court's order granting summary disposition in favor of MemberSelect Insurance Company (MemberSelect) pursuant to MCR 2.116(C)(10) (no genuine dispute of material fact) and MCR 2.116(I)(2) (party opposing motion entitled to judgment), denying the Yonos' claims for penalty interest and withheld depreciation, dismissing the Yonos' counterclaim with prejudice, and denying the Yonos' motion for reconsideration or to amend the complaint. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

On March 8, 2017, a broken water pipe caused extensive damage to the Yonos' home, which prompted the Yonos to file an insurance claim immediately. On March 17, 2017, MemberSelect sent an e-mail requesting a sworn proof of loss. The email included a one-page form titled "Sworn Statement In Proof Of Loss," and a two-page letter describing the information it was requesting.[1] The proof of loss form included sections for each category of information

---

[1] Paragraph four of the "Duties Under Part I" section of the insurance policy lists the information (a through g) that MemberSelect's insured must provide in the sworn proof of loss that is required

requested in the two-page letter. Based on the terms of the policy, the sworn proof of loss had to be submitted within 60 days of the date that MemberSelect sent the two-page letter (the initial 60-day period).

On March 21, 2017, MemberSelect received a detailed water loss report from an engineering firm that it hired to inspect the property.[2]

On July 10, 2017, Sam Yono called MemberSelect's adjuster to say that he and his wife did not get the request for a "Sworn Statement in Proof of Loss" form. MemberSelect's adjuster gave the Yonos an additional two weeks to submit the sworn statement. On July 20, 2017, the Yonos sent a photocopy of a signed and notarized one-page proof of loss form with an estimated amount claimed under the policy of $1,497,500.00.

Prior to July 20, MemberSelect sent the Yonos several checks as payment advances toward the estimated claim. On July 25, 2017, MemberSelect rejected the Yonos' sworn proof of loss, stating the amount claimed was in "excess of the true amount of the loss."

On October 2, 2017, the Yonos sent an e-mail to MemberSelect containing a detailed itemization of losses prepared by a contractor hired by the Yonos, totaling $1,501,603.05.

Weeks later, in November 2017, because the parties disagreed on the actual cash value of the loss, MemberSelect requested an appraisal of the claims. The appraisal process started in March 2018, but was not finalized until May 2022. The house was repaired during the appraisal process, and the Yonos moved back into the residence during August 2020. On August 23, 2021, a Dwelling Appraisal Award was entered by the appraisal panel, which awarded $1,016,258.00 for the replacement cost value (RCV) of the building loss and $863,819.30 for the depreciated actual cash value (ACV) of the building loss, subject to prepayments in the amount of $704,160.17 made for dwelling repairs. On August 5, 2022, MemberSelect issued a $159,659 payment for the amount owing on the Dwelling Appraisal Award. On May 10, 2022, in addition to the Dwelling Appraisal Award, a Personal Property Appraisal Award was entered, which awarded $359,945.66 for the RCV of the content's total loss items and $262,760.33 for the depreciated ACV. On August 22, 2022, MemberSelect issued a $262,760.33 payment for the amount owing on the Personal Property Appraisal Award. On May 10, 2022, an Additional Living Expense (ALE) Appraisal Award was entered in the amount of $19,500.00. On August 1, 2022, MemberSelect issued a $19,500.00 payment for the amount owing on the ALE Appraisal Award.

---

to be sent within 60 days. The two-page letter sent by MemberSelect requested that same information.

[2] Engineers from the firm inspected the property on March 15, 2017, during which they also had a discussion with Sam Yono. In addition, they communicated with the Waterford Water Department. On March 20, 2017, the engineers were informed about another plumbing failure at the residence, spoke again with Sam Yono, and also spoke with another contractor involved with construction and restoration.

This case's procedural history is extensive. Pertinent to this appeal, on September 13, 2023, the Yonos filed their motion for summary disposition, asking for a judgment consisting of the following: $262,158.14 for penalty interest on the claim payments made in August 2022; $152,438.70 for withheld depreciation; and $50.12 per day beginning on January 30, 2023, continuing through the date the Yonos received payment of withheld depreciation. Consequently, MemberSelect filed its answer to the motion, which included its own counter-motion for summary disposition brought forth pursuant to MCR 2.116(I)(2), arguing that there were no genuine issues of material fact regarding penalty interest and dwelling recoverable depreciation pursuant to MCR 2.116 (C)(10) and requesting dismissal of the Yonos' counterclaim. On November 29, 2023, the trial court issued an opinion and order granting summary disposition to MemberSelect, denying the Yonos' motion for summary disposition and counterclaim, dismissing MemberSelect's pending fraud claim, and closing the case. On December 19, 2023, the Yonos moved for reconsideration of the court's November 29, 2023 Opinion and Order denying the Yonos' motion for summary disposition and granting MemberSelect's motion for summary disposition. Alternatively, the Yonos sought leave to amend their complaint, pursuant to MCR 2.116(I)(5), to "more specifically state a claim for recovery from MemberSelect of the $152,438.70 owing on the RCV Appraisal Award." The court denied the motion for reconsideration, without addressing the request to amend the Yonos' countercomplaint.

This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a plaintiff's claim, is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted).

Questions of statutory interpretation are also reviewed de novo. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 62; 642 NW2d 663 (2002). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 579-580; 939 NW2d 705 (2019) (quotation marks and citation omitted). "The first criterion in determining intent is the specific language of the statute." *Id*. (citation and quotation marks omitted). "When the plain and ordinary meaning of statutory language is clear, judicial construction is neither necessary nor permitted." *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016). "As far as possible, effect should be given to every phrase, clause, and word in the statute." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

"This Court reviews de novo the interpretation and application of an insurance policy." *Gavrilides Mgmt Co, LLC v Mich Ins Co*, 340 Mich App 306, 315; 985 NW2d 919 (2022).

## B.  STATUTORY PENALTY INTEREST

The decision of the trial court granting MemberSelect's motion for summary disposition and determining that it did not owe the Yonos penalty interest on the basis of the Yonos' failure to submit a satisfactory proof of loss, solely relying on this Court's decision in *Hurt*,[3] is reversed.

MCL 500.2006 provides in relevant part as follows:

> (1) A person must pay on a timely basis to its insured . . . the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured . . . 12% interest, as provided in subsection (4), on claims not paid on a timely basis.  Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

> * * *

> (3)  An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within 30 days.  If proof of loss is not supplied as to the entire claim, the amount supported by proof of loss is considered paid on a timely basis if paid within 60 days after receipt of proof of loss by the insurer.  Any part of the remainder of the claim that is later supported by proof of loss is considered paid on a timely basis if paid within 60 days after receipt of the proof of loss by the insurer. . . .

> (4)  If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. . . .

The trial court in its opinion and order concluded that "the Yonos are not entitled to penalty interest because they did not comply with the requirements of the statute."  The court relied on *Hurt v Depositors Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 2020 (Docket No. 346995), and reasoned that, as in *Hurt*, the Yonos failed to submit the requested proof of loss. [4]

---

[3] *Hurt v Depositors Ins Co*, unpublished opinion of the Court of Appeals, issued April 23, 2020 (Docket No. 346995), 2020 WL 1968659, p 2.

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

-4-

*Hurt* is distinguishable from the present case. The issue in *Hurt* was whether the plaintiff could maintain a claim against her insurance carrier, not whether she was entitled to the statutory penalty for untimely payment of the claim. In *Hurt*, the plaintiff filed a claim with her insurance carrier, which then mailed a letter to the plaintiff acknowledging receipt of the claim, regarding fire damage to her home, and requesting that the plaintiff return a sworn "statement in proof of loss" within 60 days. *Id*. at 1. However, the plaintiff never returned the requested statement, arguing that she never received the request. *Id*. This Court held that the plaintiff was barred from bringing a claim against the defendant because the plaintiff failed to submit proof of loss. *Id*. at 5. In the present case, there is no dispute that the Yonos sent a sworn proof of loss claim form to MemberSelect on July 20, 2017, i.e., during the two-week extension that had been granted by MemberSelect. As such, the trial court should not have relied upon *Hurt*.[5]

The Yonos contend that, instead of relying upon *Hurt*, the trial court should have applied the reasoning of this Court's published decision, *Griswold Props, LLC v Lexington Ins Co*, 275 Mich App 543, 560-568; 740 NW2d 659 (2007) *(Griswold I)*, overruled in part on other grounds *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 554; 741 NW2d 549 (2007) *(Griswold II)*. In *Griswold*, the insurance company declined to pay the full amount claimed because it alleged the amount of damages requested was exaggerated. *Griswold II*, 276 Mich App at 554. Because the amount was disputed, the parties submitted their dispute for an appraisal determination. *Id*. After the appraisal awards were fully paid, the plaintiff moved for summary disposition for penalty interest. *Id*. This Court held that "when an insurer fails to pay a claim on a timely basis, a claimant may seek penalty interest." *Griswold II*, 276 Mich App at 554. Additionally, the Court explained that "satisfactory proof of loss does not equate to agreement as to the amount of damages." *Griswold I*, 275 Mich App at 566. Further, the insurer could still "disagree with the amount of loss claimed," but the insurer could not "argue that the insured has failed to supply satisfactory proof of loss." *Id.*

As noted, MCL 500.2006(4) provides that when the insurer fails to pay benefits within 60 days after receiving a satisfactory proof of loss, a 12% penalty interest is owed to the insured. Similar to the insurance company in *Griswold*, MemberSelect made a partial payment to the Yonos before they submitted a one-page proof of loss form. MemberSelect rejected the submitted sworn proof of loss without further written instructions. After receiving the Yonos' itemized list of damages, which totaled more than $1.5 million, MemberSelect offered payment to the Yonos in

---

[5] We also note that the Court in *Hurt* relied upon *Reynolds v Allstate Ins Co*, 123 Mich App 488, 490; 332 NW2d 583 (1983), which was a fire loss case affirming summary disposition in favor of an insurer whose insured failed to file a written proof of loss within 60 days. The Court in *Reynolds* relied upon MCL 500.2832, which required the standard fire insurance policy (commonly known at that time as the "165 lines") to contain language stating that a sworn proof of loss must be submitted within 60 days after loss, unless such time was extended in writing by the insured. However, MCL 500.2832 was subsequently repealed by the legislature, effective January 1, 1992, and was replaced with MCL 500.2833, which no longer included the language requiring the insured to provide sworn proof of loss within 60 days (subpart (p) of MCL 500.2833 currently states: "[e]xcept as otherwise provided in section 2845, the loss is payable within 30 days after receipt of proof of amount of loss.") Thus, the precedential value of *Reynolds* is debatable; however, since the parties have not raised that issue on appeal, we will not address it.

-5-

an amount that was several hundred thousand dollars less than the estimated amount. Similarly, as in *Griswold*, the parties then went through an extensive appraisal procedure, after which MemberSelect paid the appraisal awards in full. Soon after the awards were paid, the Yonos moved for summary disposition regarding the aforementioned statutory penalty.

MemberSelect argues that *Griswold* is distinguishable because MemberSelect twice specified in writing, via e-mail, what would constitute a satisfactory proof of loss before the Yonos submitted the proof of loss form. MemberSelect also produced a written rejection of the Yonos' submitted proof of loss. Further, MemberSelect notes that in *Griswold*, unlike in the present case, the insured submitted "a breakdown of losses and repair bids from contractors." *Griswold I*, 275 Mich App at 561. The Yonos, however, only originally submitted the one-page form (i.e., the form provided to them by MemberSelect) claiming almost $1.5 million for damage to their house without providing any documentation or breakdown of costs for MemberSelect to review and "identify particular problems that could then be conveyed to the Yonos."

The Yonos argue that *Griswold* stands for the following proposition: "[I]f, within 30 days *after receipt of a proof of loss*, the insurer rejects the proof but fails to specify in writing the materials or other evidence it would accept as proof of loss, then the insured was excused from submitting a proof of loss and the matter shall proceed as if a satisfactory proof of loss were submitted." The Yonos argue that because MemberSelect did not specify what documents it would accept as satisfactory proof of loss *after* the rejection of the Yonos' July 20, 2017 submission, "the proof of loss should have been deemed satisfactory and *the award amounts should have been paid 60 days later, no later than September 18, 2017*." But, the Yonos' interpretation of *Griswold* is not consistent with the relevant authority. MCL 500.2006(3) provides that "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days *after receipt of a claim* unless the claim is settled within the 30 days." (Emphasis added.) The statute clearly indicates that the insurer's obligation to issue a written statement regarding what constitutes a satisfactory proof of loss has to be done 30 days after *receipt of the claim*, not *after receipt of a proof of loss*, as the Yonos suggest on appeal. Additionally, nowhere in *Griswold* is the statute interpreted to suggest that rejection of the proof of loss triggers an obligation to issue a written statement.

Although the facts of this case do not precisely mirror *Griswold*, this Court's interpretation of the penalty interest statute in *Griswold* provides guidance in the present matter. Notably, "satisfactory proof of loss does not require agreement of the parties as to the amount of damages, but is rather the process of the insured providing the documents and evidence required by the insurer to begin processing the claim . . . ." *Griswold I*, 275 Mich App at 543. In addition, under MCL 500.2006(4), "penalty interest is triggered by receipt of 'satisfactory proof of loss,' not satisfactory proof of the amount of loss." *Id*. at 568. Finally, the question of whether an insured has substantially complied with a proof of loss requirement is a question of fact and is not to be decided via summary disposition. *Id*. at 574.

To reiterate, MemberSelect's position is that it was entitled to summary disposition because the Yonos failed to strictly comply with the policy's proof of loss requirement. On the flip side, the Yonos argue that they were entitled to summary disposition because they did in fact comply with the policy's proof of loss requirement. Because satisfactory proof of loss is a triggering event requiring an insurer to pay penalty interest pursuant to MCL 500.2006(3) and (4) if payment was

not issued within 60 days, the issue is not whether the trial court should have relied on *Griswold* or *Hurt*. Rather, the issue is whether a question of fact exists as to whether the proof of loss submitted by the Yonos was satisfactory, such that MemberSelect was required to issue payment within 60 days pursuant to MCL 500.2006(4), and what amount of penalty interest is owed, if any, pursuant to the statute.

We note that MemberSelect's argument in this matter completely ignores the fact that the Yonos supplied it with a detailed itemization of damages, prepared by a contractor, on October 2, 2017, which was roughly 58 months prior to the time payment was finally made by MemberSelect. When asked about that fact during oral argument, MemberSelect essentially argued that it could not be required to pay penalty interest, no matter how long it delayed making payment in this matter (even, say, twenty years) if satisfactory proof of loss was not supplied within 60 days after it sent the Yonos the letter required by MCL 500.2006(3). However, MemberSelect's argument ignores the plain wording of subpart 4, which says, "[if] benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer. . . ." This provision could not be any clearer - if satisfactory proof of loss is received by the insurer, and the insurer does not timely pay those benefits, then the insurer starts owing simple interest on the benefits on day 61. There are no exceptions contained in subpart (4) indicating situations in which such penalty interest is not owed, including the exception argued by MemberSelect.

MemberSelect's argument misconstrues the plain language of the subject policy of insurance, specifically paragraph four of the section entitled "Duties Under Part I," which says, in the event of loss, the insured must "send us within 60 says after loss, a proof of loss signed and sworn to by the insured person, including: a. the time and cause of loss; b. the interest of insured persons and all others in the property; c. Actual Cash Value and amount of loss to the property; d. all encumbrances on the property; e. other policies covering the loss; f. changes in title, use, occupancy or possession of the property; and g. if required, any plans and specifications of the damaged buildings or fixtures." Despite MemberSelect's assertion to the contrary, paragraph four of the policy contains no language pertaining to "satisfactory" proof of loss or penalty interest. Thus, the Yonos' obligation to provide sworn proof of loss within the initial 60-day period was limited to the information requested in paragraph four of the policy. Although they may have been required to provide additional information to trigger payment of the claim under MCL 500.2006, the Yonos were not required to provide any additional information to comply with paragraph four of the policy.

MemberSelect's argument also conflates the requirements of "satisfactory proof of loss" under MCL 500.2006, which establish the circumstances in which an insured is entitled to penalty interest, with paragraph four of the policy, i.e., the duty of the insured to provide sworn proof of loss within 60 days of receiving the letter sent by the insurer pursuant to MCL 500.2006(3) (the initial 60-day period). MemberSelect would have this Court use those terms interchangeably; however, taken in the proper context, they have different meanings. As noted above, the 60-day sworn proof of loss referenced in the insurance policy pertains solely to the information delineated in paragraph four of the policy. The "satisfactory proof of loss" referenced in MCL 500.2006 refers to the information that is necessary to trigger payment of a claim by an insurer and requiring that insurer to pay penalty interest if payment is not timely made. An insured who has complied with paragraph four of the subject policy has not necessarily provided proof triggering payment

by the insurer because there may be additional information necessary to provide satisfactory proof of loss pursuant to MCL 500.2006(4), which may include information obtained by the insured later in the pendency of the claim.[6]

The plain language of the following two sentences of MCL 500.2006(3) demonstrate that an insured, who has submitted sworn proof of loss within the 60-day period required by the policy, can trigger payment of penalty interest by supplying additional evidence to the insurer after that 60-day period:

> If proof of loss is not supplied as to the entire claim, the amount supported by proof of loss is considered paid on a timely basis if paid within 60 days after receipt of proof of loss by the insurer. Any part of the remainder of the claim that is later supported by proof of loss is considered paid on a timely basis if paid within 60 days after receipt of the proof of loss by the insurer. [MCL 500.2006(3).]

These provisions make clear that (1) proof of loss can continue to be supplied to the insurer throughout the claims process, and (2) the insurer must continue to timely pay claims whenever proof of loss is paid throughout the claims process. These two sentences, when read in concert with subpart 4, demonstrate that penalty interest can be owed by an insurer whenever it fails to make payment within 60 days of receiving satisfactory proof of loss, including satisfactory proof of loss received after the initial 60-day period. To accept defendant's argument would be to render nugatory those two sentences from subpart 3. "[A] court should avoid a construction that would render any part of the statute surplusage or nugatory." *In re Certified Questions*, 506 Mich 332, 352; 958 NW2d 1 (2020).

Considering the record before us, we find that the issue of whether the Yonos presented MemberSelect with satisfactory proof of loss, more than 60 days prior to the payments made by MemberSelect in 2022, pursuant to MCL 500.2006(4), is a question of fact. Likewise, in the event that the jury decides that question in the Yonos' favor, then the amount of penalty interest owed by MemberSelect is also a question of fact to be decided by the jury. Because the trial court erred by granting summary disposition considering these factual disputes, we reverse the trial court's order granting summary disposition regarding penalty interest and remand for further proceedings.

## C. CLAIM FOR WITHHELD DEPRECIATION

The trial court did not err by granting MemberSelect summary disposition of the Yonos' claim for withheld depreciation after the Yonos acquired another house because the claim lacks a legal basis.

The circuit court ruled that, because the Yonos' depreciation claim was made on December 1, 2022—five years after the claim of loss—and was not included in their counterclaim, the claim was not properly before the court. Additionally, the court quoted *Nat'l Waterworks, Inc v Int'l*

---

[6] We do not suggest that an insured's compliance with paragraph four of the subject policy would never trigger payment by the insurance company – in some cases, it certainly would – but compliance with paragraph four will not necessarily always trigger payment of a claim, by itself.

*Fidelity & Surety, Ltd*, 275 Mich App 256, 265 (2007), saying that "[a] party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim."

The Yonos filed their summary disposition motion pursuant to MCR 2.116(C)(l0). In addition to their penalty interest claim, the Yonos asserted that MemberSelect was liable for payment of withheld depreciation. The argument relied solely on the insurance policy, without citing any legal authority to support this claim. The pertinent parts of the insurance policy provide:

> CONDITIONS APPLYING TO PART I
>
> We will pay the cost to repair or replace the damaged part of the dwelling or additional structures with new materials of like size, kind and quality on the same or another premises, without deduction for depreciation if, at the time of loss, the amount of insurance for the dwelling or additional structures covered by this policy is 80% or more of the Replacement Cost.
>
> . . .
>
> If the cost to repair or replace the damaged property is more than $1,000, we will not be liable for Replacement Cost until actual repair or replacement is completed with new materials of like size, kind and quality on the same or another premises.
>
> . . .
>
> If you decide not to repair or replace the damaged property with new materials of like size, kind and quality on the same or another premises, settlement will be on an Actual Cash value basis; this includes deduction for depreciation. *You may make a claim within two years after the date of loss* for any additional payment on a Replacement Cost basis if you repair or replace the damaged property with new materials of like size, kind and quality on the same or another premises. (Emphasis added).

The Yonos take umbrage with the trial court's assertion that they did not provide support for their claim. The Yonos argue on appeal that their "[m]otion included the facts, supporting documentation[,] and specific policy language underlying their claim for the withheld depreciation. The Yonos did not leave it to the Court to discover or rationalize the basis for recovery under the Policy." The Yonos cite *Batton-Jajuga v Farm Bureau Gen Ins Co of Mich*, 322 Mich App 422, 430-432; 913 NW2d 351 (2017), to support their argument that MemberSelect is liable for the replacement cost for an analogous property if the Yonos chose to exercise the option of purchasing a replacement property. However, the Yonos did not choose to purchase a new house; instead, they chose the lengthy appraisal process, which was focused solely on actual repairs and repair costs for the damaged home. Moreover, the Yonos purchased a new home after all awards were paid in full. Additionally, as MemberSelect argued, if the Yonos intended to buy a replacement home they were required to do so within the two-year time frame specified by the insurance policy.

MemberSelect paid the Yonos a substantial amount for the actual cash value of the loss, and the delay in paying the replacement cost stemmed from the parties' disagreement over the amount of loss. The Yonos failed to cite any legal authority to support their claim that they were entitled to the withheld depreciation amount for purchasing or replacing a new home after the insurance company paid the full award for house repairs—five years after the original loss. Moreover, the insurance policy does not support the Yonos' claim. The policy provides that MemberSelect will pay the cost to "repair or replace the dwelling," but the Yonos failed to claim the withheld depreciation within two years of the loss, as required by the policy. If their intent was to replace the dwelling rather than repair it, the Yonos never indicated this intention at any point during the appraisal process. Additionally, the Yonos fail to present a developed argument explaining why MemberSelect owed money for withheld depreciation after awards granted to fully repair the insured house were fully paid. "A party abandons a claim when it fails to make a meaningful argument in support of its position." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

Therefore, we affirm the court's decision to grant MemberSelect's dispositive motion regarding the Yonos' claim for withheld depreciation.

D. MOTION TO AMEND COMPLAINT

The trial court did not abuse its discretion by declining to address the new argument regarding the counterclaim amendment because, by failing to raise the issue until moving for reconsideration, the Yonos did not properly present it to the court. Regardless any amendment to the complaint would be futile.

"A trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion." *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017). To preserve an issue, a party must raise it before the lower court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). An issue is not preserved if it is presented to the trial court for the first time in a motion for reconsideration. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 300-301; 14 NW3d 472 (2023). The Yonos did not raise the issue of amending their counterclaim until filing the motion for reconsideration, where they sought it as an alternative remedy. Therefore, the issue is not preserved. "In civil cases, Michigan follows the raise or waive rule of appellate review." *Id*. at 289 (quotation marks and citation omitted). However, this Court may address an unpreserved issue "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citations omitted).

The Yonos argue that they are entitled to amend their counterclaim pursuant to MCR 2.116(I)(5). Generally, when a trial court grants summary disposition pursuant to MCR 2.116(C)(8), (C)(9), or (C)(10), the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018). Moreover, "leave shall be freely given when justice so requires." MCR 2.118(A)(2). "A motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party, or futility." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006). "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *Id*. While acknowledging that the Yonos moved to amend their counterclaim for the first time in the motion for reconsideration under MCR 2.116(I)(5), the trial court did not address this motion or make any findings on the issue. However, this Court may review an unaddressed issue "if the question is one of law and the facts necessary for its resolution have been presented." *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 119; 559 NW2d 54 (1996).

We do not believe that declining to consider the late-requested amendment would result in manifest injustice. The Yonos' counterclaim sought an additional $152,438.70 in withheld depreciation for purchasing a replacement dwelling on May 25, 2022—after receiving full payment for restoring their original house. While the Yonos argue that the depreciation claim could not have been included in the original complaint because the replacement home was purchased later, they cannot demonstrate that "the outcome of the proceedings likely would have been different" had the trial court considered their motion. See *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 276-277; 824 NW2d 573 (2012). Additionally, while the trial court's rationale for not addressing the motion to amend is unknown, we still find no abuse of discretion. The amendment would have been futile because it was untimely and without merit, as discussed earlier. "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Mich Head & Spine Inst, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 277; 951 NW2d 731 (2019). Additionally, "[t]here is no injustice if the proceedings would have reached the same result if the trial court had not denied a party leave to amend its pleadings." *PT Today, Inc*, 270 Mich App at 142.

Although the trial court did not address the Yonos' untimely argument that they should be granted leave to amend their counterclaim, we affirm its decision because no injustice occurred.

III. CONCLUSION

We reverse the trial court's order granting summary disposition regarding statutory penalty interest. The trial court is affirmed in all other respects. The case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace

-11-